IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 1, 2009 Session

## STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES v. ANTHONY DEWAYNE HOOD

**Direct Appeal from the Juvenile Court for Fentress County**
**No. 2901      Michael Todd Burnett, Judge**

---

**No. M2009-00911-COA-R3-PT - Filed December 30, 2009**

---

This is a termination of parental rights case. Father/Appellant appeals the trial court's order, terminating his parental rights to four of his biological children. The trial court terminated Appellant's parental rights upon its finding, by clear and convincing evidence, that Appellant had abandoned the children by engaging in conduct prior to his incarceration that exhibits a wanton disregard for the welfare of the children, that there is a persistence of conditions, and that termination of Appellant's parental rights is in the best interests of the children. We find that the trial court erred in finding persistence of conditions. However, we affirm the trial court's finding of abandonment and that termination is in the best interests of the children.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part and Reversed in Part.**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S.,. and Holly M., Kirby, J., joined.

James Reed Brown, Byrdstown, Tennessee, for the Appellant, Anthony Dewayne Hood.

Robert E. Cooper, Jr., Attorney General and Reporter, and Michael E. Moore, Solicitor General, Jill Z. Grim, Assistant Attorney General, Douglas Earl Dimond, Senior Counsel and Elizabeth C. Driver, Lead Counsel, Nashville, Tennessee, for Appellee, State of Tennessee, Department of Children's Services.

### OPINION

Appellant Anthony Dewayne Hood("Mr. Hood") is the biological father of the four children at issue in this case. The children's mother was initially a party to this suit; however, she surrendered her parental rights before the trial (on November 25, 2008), and she is not a party to this

appeal. Mr. Hood is also the adoptive father of a fifth child, B.H, the custody of whom is not at issue in this appeal.

In 2001 or 2002, Mr. Hood and the children's mother split up. Dr. Julian Sanborn, a permanency clinician who conducted three sessions with the Hood children in 2007, testified that, following his split with the children's mother, Mr. Hood took the children out of state without Ms. Hood's consent. For approximately three years, the children's mother had no knowledge of the whereabouts of Mr. Hood and the children. During this time, Mr. Hood and the children lived in Waveland, Mississippi, where they became acquainted with Jesse and Jackie Caves. During the time they lived in Mississippi, Mr. Hood was hospitalized frequently for medical problems, including lung disease, emphysema, and pneumonia. During those times that Mr. Hood was hospitalized, the Caves would look after the children.

In August, 2005, Hurricane Katrina decimated the Waveland, Mississippi area, leaving both Mr. Hood and the Caves without homes. In the wake of the hurricane, Mr. Hood and the children moved to Fentress County, Tennessee. The Caves also decided to move to Fentress County. When he returned to Tennessee, Mr. Hood made contact with his ex-wife, Leisha Hicks (not the mother of the children at issue in this appeal). Despite the fact that Ms. Hicks had a history of problems with drugs and alcohol, Mr. Hood allowed her to live in the family home. After about five weeks, the relationship between Mr. Hood and Ms. Hicks deteriorated to the point that Mr. Hood asked Ms. Hicks to move out.

On November 16, 2005 (the night before Ms. Hicks was supposed to be out of Mr. Hood's home), the police were called to the residence. Ms. Hicks informed the police that she had witnessed Mr. Hood in a sexual position with Mr. Hood's adopted daughter, B.H. B.H. was removed from Mr. Hood's home, but the other four children were not. On July 12, 2006, Mr. Hood was arrested for the sexual battery of B.H. When he was arrested, Mr. Hood asked the Caves to look after the four children, and eventually executed a power of attorney in favor of the Caves so that they could enroll the children in school.

After supporting the Hood children for several months without any financial assistance, Mr. Caves contacted the Appellee State of Tennessee Department of Children's Services ("DCS"). On September 22, 2006, DCS filed a petition to declare the children dependent and neglected. On September 25, 2006, a restraining order was entered, prohibiting contact between Mr. Hood and the children, and the children were brought into the protective custody of the juvenile court. On October 23, 2006, the trial court found probable cause to believe the children were dependent and neglected and entered a protective order, removing the children from Mr. Hood's custody. A guardian ad litem was appointed for the children, and counsel was appointed for Mr. Hood. After the Hood children entered state custody, they were officially placed in foster care with the Caves, who were then able to receive services for the children.

Beginning on November 9, 2006, DCS developed multiple sets of permanency plans to assist with the reunification of the Hood family. All of the permanency plans were subsequently ratified

by the trial court. Although Mr. Hood was incarcerated, the record indicates that DCS mailed him written notice of the permanency plan meetings, and informed him that he could participate in the meetings by telephone, or by providing written input. He did neither.

On November 14, 2006, Mr. Hood was released from jail on bond. He remained free for nearly five months, during which time he collected disability income. Despite receiving this income, Mr. Hood did not provide support for the children. Moreover, he never made contact with DCS to inquire as to their welfare. When questioned as to why he failed to make contact with DCS, Mr. Hood stated that he had no reason to contact DCS. On April 3, 2007, Mr. Hood was returned to jail after failing to appear in court.

On June 28, 2007, Mr. Hood was tried for the sexual battery of B.H. He was found guilty of sexual battery by an authority figure, and was sentenced to six years in prison. During the criminal trial, Mr. Hood admitted that he had sent B.H. money so that she could run away from her foster home.

In February 2008, DCS caseworker Brandon Presley testified that he mailed a letter and copies of the permanency plans to Mr. Hood at Turney Prison. In his letter, Mr. Presley encouraged Mr. Hood to take part in any parenting or alcohol and drug programs that were offered in prison. Two months after sending the letter, Mr. Presley testified that he called the prison to inquire about the specific programs available to inmates. Following this conversation, he again wrote to Mr. Hood to encourage him to avail himself of these programs. Although Mr. Hood twice responded to Mr. Presley's correspondence, there is no proof in record that he actually participated in any of the available programs.

On May 21, 2008, DCS filed a petition to terminate Mr. Hood's parental rights to his four biological children. In its petition, DCS asserted the following grounds: (1) abandonment by an incarcerated parent; (2) persistence of conditions; (3) severe child abuse, and (4) receipt of a sentence of two or more years for the severe abuse of a sibling of the children who were the subject of the petition. DCS also alleged that termination of Mr. Hood's parental rights was in the best interests of the children. The petition was heard on December 10, 2008. By Order of February 6, 2009, the trial court terminated Mr. Hood's parental rights to his four children on grounds of abandonment and persistence of conditions, and upon its finding that termination was in the children's best interests.

Mr. Hood appeals the termination of his parental rights, and raises three issues for review as stated in his brief:

> I. Whether the Court erred by admitting the transcript from the criminal trial into evidence.
>
> II. Whether, by clear and convincing evidence, the Department has proven persistence of conditions when there was no prior adjudication of abuse or neglect.

III. Whether, by clear and convincing evidence, the Department has proven that the appellant has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the children.

### Admission of the Criminal Trial Transcript

At the beginning of the hearing in this case, the trial court admitted the transcript of Mr. Hood's criminal trial over the objection of his attorney. Specifically, Mr. Hood asserted that the criminal trial transcript did not support any of the grounds for termination asserted by DCS in its petition. DCS countered that the criminal case supported the grounds of persistence of conditions and abandonment by wanton disregard for the welfare of the children prior to Mr. Hood's incarceration. Mr. Hood then argued that the transcript was hearsay and, consequently, inadmissible. Specifically, Mr. Hood argued that this was not the same proceeding and therefore the hearsay exception did not apply. DCS argued that the eyewitness to the event, Leisha Hicks, and the victim, B.H. were both unavailable to testify in the termination of parental rights hearing. DCS supported this argument by explaining to the trial court that it did not know the whereabouts of Ms. Hicks and that it would offer the testimony of a DCS employee who had attempted to contact B.H. and had been unsuccessful.

From our review of the record, it appears that the trial court, in making its decision in this case, only relied upon the testimony of B.H. and Mr. Hood from the criminal trial. Tennessee Rules of Evidence 804(b) provides:

> (b) Hearsay Exceptions. —The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
> (1) Former Testimony. —Testimony given as a witness at another hearing of the same or a different proceeding or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered had both an opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination. [1]

---

[1] Unavailability is defined in Tenn. R. Evid. 804(a) as:

"Unavailability of a witness" includes situations in which the declarant
(1) Is exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement; or
(2) Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; or
(3) Demonstrates a lack of memory of the subject matter of the declarant's statement; or
(4) Is unable to be present or to testify at the hearing because of the declarant's death or then existing physical or mental illness or infirmity; or

(continued...)

Accordingly, if a witness previously testified in another proceeding and the party whom the testimony is offered against had an opportunity to examine the witness and a similar motive to develop that witness' testimony, then that testimony may be admitted in a subsequent proceeding if the witness is unavailable.

Although, in his brief, Mr. Hood disputes the unavailability of the witnesses on appeal, from our review of the record, it appears that Mr. Hood did not raise this issue at the trial level. As a general rule, "questions not raised in the trial court will not be entertained on appeal." *City of Cookeville ex rel. Cookeville Regional Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 905-06 (Tenn.2004); *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn.2001). In the absence of any argument at trial that the witnesses were, in fact, available, Mr. Hood cannot be heard to complain on appeal. Moreover, Court of Appeals Rule 6 requires the Appellant to cite to the record in order to show where the alleged error was "seasonably called to the attention of the trial judge." Mr. Hood fails to cite in his brief where in the record he objected to the unavailability of the witnesses from the criminal trial. Tenn. Ct. App. R. 6. Because it appears to this Court that Mr. Hood did not object to the availability of the witnesses nor does he provide this Court with a citation to where he did so, we cannot review this issue on appeal.

Upon finding B.H. unavailable, the trial court may allow her testimony in the criminal trial to be admitted into evidence if it finds that Mr. Hood had both an opportunity and similar motive to develop her testimony previously. We have reviewed the transcript from the criminal proceeding and find that Mr. Hood did in fact have an opportunity to cross examine B.H. Further, because B.H. testified about the allegations of sexual battery by Mr. Hood, the fact that Mr. Hood had blamed her for his family troubles, and that he had attempted to help her run away from her foster family, we find that it is directly relevant to the termination of parental rights proceeding and that Mr. Hood had a similar motive to develop her testimony in the criminal trial. Consequently, we can not say that the trial court abused its discretion in admitting into evidence B.H.'s previous testimony.

It also appears that the trial court may have relied upon the testimony of Mr. Hood at his criminal trial in reaching its decision in this case. Tennessee Rules of Evidence 803(1.2) provides that statements made by a party and offered against that party are exceptions to the hearsay rule and admissible evidence. Clearly, Mr. Hood's own testimony at his criminal trial would be admissible against him at the hearing on the petition to terminate his parental rights. Accordingly, the trial court did not err in considering this testimony.

We recognize that the entire transcript from the criminal trial was admitted into evidence and that this transcript included the testimony from other witnesses in addition to B.H. and Mr. Hood. However, it does not appear that the trial court relied upon the testimony of any other witness at the

---

[1](...continued)
  (5) Is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance by process; or
  (6) For depositions in civil actions only, is at a greater distance than 100 miles from the place of trial or hearing.

criminal trial in making its decision in this case. Accordingly, any error, if any, in admitting the entire transcript is harmless.

## Termination of Parental Rights

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn.1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn.2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn.2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable ... and eliminates any serious or substantial doubt about correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App.2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review set as forth in Tenn. R. App. P. 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn.2002). That being said, when the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *See McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn.1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App.1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *See id.*; *see also Walton v. Young*, 950 S.W.2d 956, 959 (Tenn.1997).

**Grounds for Termination of Parental Rights**

The trial court terminated Mr. Hood's parental rights on two grounds: (1) abandonment under Tenn. Code Ann. § 36-1-113(g)(1), and (2) persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3).[2] We will review both of these grounds against the appellate record to determine whether they were proven by clear and convincing evidence.

**Abandonment**

Tenn. Code Ann. § 36-1-113(g)(1) provides that a parent's rights may be terminated on the ground of abandonment as defined in Tenn. Code Ann. § 36-1-102. That statute defines abandonment, for purposes of terminating parental rights, as follows:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv). In *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005), perm. app. denied (Tenn. Nov. 7, 2005), this Court noted that: Tenn. Code Ann. § 36-1-102(1)(A)(iv) reflects the idea that if a parent is incarcerated, the child's welfare may be threatened. *In re Audrey S.*, 182 S.W.3d at 866 (footnote omitted). However, incarceration alone is not enough to find abandonment. *Id; see also* Tenn. Code Ann. § 36-1-102(1)(A)(iv). Accordingly, the statute also requires that the parent either (1) willfully fail to visit or support the child for four months immediately proceeding such action or (2) engage in conduct prior to incarceration indicating a wanton disregard for the welfare of the child.[3] Tenn. Code. Ann. § 36-1-102(1)(A)(iv).

---

[2] At oral argument, there was some confusion as to whether persistence of condition could be used as a ground for termination of Mr. Hood's parental rights. Mr. Hood's counsel argued that, under *In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005), perm. app. denied (Tenn. Nov. 7, 2005), there must be a prior finding of dependency and neglect in order to find persistence of conditions at the time of termination of parental rights. At the outset of its argument, counsel for DCS concedes that the grounds of persistence of conditions was incorrectly applied in this case.

[3] The State alleged in its Petition to Terminate Parental Rights that Mr. Hood had also willfully failed to support his children for four months immediately preceding his incarceration. The trial court, however, found that the State did not prove this ground by clear and convincing evidence. Neither party raised an issue with this finding on appeal. Accordingly, we do not review this finding.

This Court has recently held that parental conduct exhibiting wanton disregard for a child's welfare may occur at any time prior to incarceration and is not limited to acts occurring during the four-month period immediately preceding the parent's incarceration. *In re Jeremiah T.*, No. E2008-02099-COA-R3-PT, 2009 WL 1162860, *8 (Tenn. Ct. App. April 30, 2009) (citing *In re Audrey S.*, 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005)). Moreover, we have held that a parent's poor judgment and bad acts that affect the children constitute a wanton disregard for the welfare of the children. *State v. Harville*, No. E2008-00475-COA-R3-PT, 2009 WL 961782, *7 (Tenn. Ct. App. April 9, 2009).

The trial court found that the state had proven abandonment by clear and convincing evidence as Mr. Hood exhibited a wanton disregard for the welfare of his children prior to incarceration. Specifically, with regard to abandonment, the trial court found that Mr. Hood exhibited a wanton disregard to the welfare of the children by admittedly allowing his ex-wife, a known drug addict and alcoholic, to live with him and the children; because that he was convicted of sexual battery by an authority figure against a sibling of the children; by blaming the child-victim for his family problems, and attempting to assist her in running away from her foster home. The trial court found that while B.H., the victim of the sexual battery, was not part of this case, Mr. Hood's actions towards her exhibited a wanton disregard towards all of his children

We have reviewed the record in this case, and conclude that there is clear and convincing evidence to support the trial court's finding that Mr. Hood exhibited a wanton disregard for the welfare of his children so as to constitute abandonment under Tenn. Code Ann. § 36-1-113(g)(1). Most egregious is Mr. Hood's sexual abuse of his adopted daughter B.H. Although his conviction for sexual abuse by an authority figure does not, as the trial court correctly points out, constitute grounds of severe child abuse under the termination of parental rights statutory scheme, it does indicate a very serious problem in the household. Moreover, the record shows that Mr. Hood allowed his ex-wife, a known drug addict and alcoholic, to live in the house with the children. Furthermore, by his own admission, Mr. Hood plotted with B.H. and, in fact, sent money to enable B.H. to leave her foster care placement. In his testimony concerning this decision, Mr. Hood exhibits a cavalier attitude and does not seem to fully grasp the consequences of his actions, nor does he accept responsibility for his part therein. From the totality of the circumstances, we conclude that there is clear and convincing evidence in the record to support the trial court's finding that grounds of abandonment by wanton disregard for the welfare of the children exist in this case.

### Persistence of Conditions

Tenn. Code Ann. § 36-1-113(g)(3) provides:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
>
> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected

to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

In *In re Audrey S*., 182 S.W.3d 838 (Tenn. Ct. App.2005), this Court held that, "based upon the statutory text and its historical development, Tenn. Code Ann. § 36-1-113(g)(3) [ground of persistence of conditions] applies as a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." Accordingly, we must determine whether the October 23, 2006 Order removing the children from Mr. Hood's custody constituted a judicial finding of dependency, neglect or abuse.

When a child has been alleged dependent, neglected or abused, there are three types of hearings the follow: (1) preliminary, (2) adjudicatory, and (3) dispositional. *In re Audrey S.*, 182 S.W.3d at 874 (citations omitted). The purpose of an adjudicatory hearing is to determine whether the allegations of dependency, neglect or abuse are true. *Id.* In an adjudicatory hearing, the Rules of Evidence apply and the trial court must find that the children are dependent, neglected or abused by clear and convincing evidence. *Id.* at 874-75 (citations omitted). On the other hand, a preliminary hearing, which occurs prior to the adjudicatory hearing, is only to allow the trial court to determine whether the child should be removed pending the adjudicatory hearing. *Id.* at 875 (citations omitted). In making this determination, the trial court may consider reliable hearsay and must only find probable cause to believe the child is dependent, neglected or abused in order to remove the child. *Id.* Because of these differences, an order from a preliminary hearing, based on a finding of probable cause, is not a judicial finding of dependency, neglect or abuse. *Id.* Consequently, it cannot give rise to grounds of persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3) in a termination proceeding. *Id.*

The October 23, 2006 Order by the trial court, was a protective order, removing the children from Mr. Hood's custody based on probable cause to believe the children were dependent and neglected. While a petition to declare the children dependent and neglected was filed, the children were never adjudicated dependent and neglected in accordance with *In re Audrey S.* Because there was never a judicial finding of dependency, neglect or abuse, based on clear and convincing evidence, persistance of conditions under Tenn. Code Ann. §36-1-113(g) cannot be a ground for termination of parental rights. Accordingly, we find that the trial court erred in relying on Tenn. Code Ann. §36-1-113(g) as a ground for termination and reverse this finding.

Despite this finding, we still find that the State has proven grounds for termination of Mr. Hood's parental rights. The State need only prove one of the statutory grounds in order to terminate Mr. Hood's parental rights. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367

(Tenn.2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn.2002). Because we have found that the trial court did not err in concluding that the State had proven abandonment by clear and convincing evidence, we proceed with our review.

## Best Interest Analysis

Although Mr. Hood does not raise an issue concerning the trial court's finding that termination of his parental rights was in the best interests of the children, before a court in this State can terminate a biological parent's parental rights, it must find that doing so is in the best interest of the child. *See* Tenn Code Ann. § 36-1-113(c)(2). Consequently, we will review the trial court's findings on the issue of best interests.

Tennessee Code Annotated § 36-1-113(I) provides a list of factors the trial court is to consider when determining if termination is in the child's best interest.[4] However, this list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. *State v. T.S.W.*, No. M2001-01735-COA-R3-JV, 2002 WL 970434 (Tenn. Ct. App. May 10, 2002). Here, the trial court reviewed many of these factors, and made the following, specific findings concerning the children's best interests: (1) Mr. Hood has not made an adjustment of circumstances, conduct, or conditions to make it safe or in the child's best interests to return the children to his home; (2) Mr. Hood has not made any lasting adjustments and

---

[4] Tenn. Code Ann. § 36-1-113(i) provides :

> 1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

it is not reasonably possibly that he would in the near future;[5] (3) Mr. Hood was convicted of sexual battery of his oldest child, a sibling of these children; (4) Mr. Hood does not have a home and when he did, he allowed a known drug addict and alcoholic to reside with him and the children; and (5) every professional that testified, found that the children want a stable home and family, and that every child had told either the trial court or a professional that he or she wishes to be placed for adoption.

We have reviewed the record in this case, and conclude that there are several best interest factors that weigh against Mr. Hood. As discussed above, Mr. Hood has failed to make an adjustment of circumstances despite reasonable efforts on the part of DCS. Specifically, Mr. Hood has failed to participate in sex offender treatment, which, under the circumstances of this case, would be mandatory before the children could reside with him again. Tenn. Code Ann. §§ 36-1-113(i)(1) and (2). Also, as discussed above, the children have expressed a desire to stay with the Caves. Given the circumstances, we conclude that it would be detrimental to remove these children from the loving, stable, and safe home they have found with the Caves. Tenn. Code Ann. § 36-1-113(i)(5). Moreover, Mr. Hood has sexually abused the children's sibling. Tenn. Code Ann. § 36-1-113(i)(6). Furthermore, Mr. Hood has failed to maintain a safe home environment by allowing a known drug addict and alcoholic to live with the children. Tenn. Code Ann. § 36-1-113(i)(7). Mr. Hood has failed to provide support for the children, even while he was not incarcerated and was receiving disability income, Tenn. Code Ann. § 36-1-113(i)(9); and, when he was out of jail on bond, Mr. Hood failed to contact DCS to inquire about his children. When asked why he did not contact DCS, Mr. Hood testified that he had no reason to contact DCS. Most importantly, however, these children have found a stable and safe home with the Caves, and the Caves have indicated a desire to adopt all four children. From the totality of the circumstance, we conclude that there is clear and convincing evidence in record to support the trial court's finding that termination of Mr. Hood's parental rights is in the best interests of these children.

For the foregoing reasons, we affirm in part and reverse in part the order of the trial court, terminating Mr. Hood's parental rights to the four children at issue in this case. Costs of this appeal are assessed against the Appellant, Anthony Dewayne Hood, and his surety.

_____
J. STEVEN STAFFORD, J.

---

[5] The trial court made a specific finding that DCS had exercised reasonable efforts in this case. Mr. Hood has not raised an issue concerning whether the trial court erred in so finding.

-11-