IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 8, 2012

IN RE ALYSSA B.

Appeal from the Chancery Court for Rutherford County
No. 11CV357     Robert E. Corlew, III, Chancellor

No. M2011-02698-COA-R3-PT - Filed July 25, 2012

Mother appeals the termination of her parental rights and argues that the trial court erred in deciding the termination action while a de novo appeal of a dependency and neglect action was pending in circuit court. Finding no error in the actions of the trial court, we affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Mitchell Jeffrey Ferguson, Murfreesboro, Tennessee, for the appellant, Alason Margaret B.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Joshua Davis Baker, Assistant Attorney General; for the appellee, State of Tennessee, Department of Children's Services.

OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Alyssa M. B. was born to Alason M. B. ("Mother") and Dustin J. B. ("Father") in November 2008.

On July 12, 2010, Mother and Father were arrested and charged with various drug-related crimes.[1] Alyssa was taken into emergency protective custody based upon allegations of drug exposure and the presence of illegal drugs in the home. On July 14, 2010, the

_____

[1]Mother eventually pled guilty to a Class C felony for possession of less than 0.5 grams of a Schedule II drug; she was sentenced to three years of probation and fined $2,000.

juvenile court entered a protective order placing Alyssa in the custody of the Department of Children's Services ("DCS"). DCS filed a petition in juvenile court asking that Alyssa be declared dependent and neglected. After an adjudicatory and dispositional hearing, the juvenile court issued a final order on February 10, 2011 finding Alyssa to be dependent and neglected and providing that she remain in state custody. Mother filed a timely appeal to the circuit court for de novo review.

DCS developed an initial permanency plan for Alyssa dated July 30, 2010 with dual goals of reunification and adoption and a target completion date of January 30, 2011. The plan includes a number of requirements for Mother: pass a drug screen before each visitation, complete an alcohol and drug assessment and follow the recommendations, submit to and pass random drug screens, refrain from any drug-related activity and avoid other drug users, participate in a parenting assessment and follow the recommendations, demonstrate appropriate parenting skills, maintain a safe home free from drugs and drug-related materials, obtain a legal means of income and verify with documentation, complete a budget and update it quarterly, provide DCS with a copy of her lease, allow DCS to visit her home, resolve her criminal charges and refrain from incurring new charges, participate in a clinical assessment and follow the recommendations, and submit to pill counts of all prescribed medications. Mother agreed to the permanency plan, which was ratified by the juvenile court in September 2010.

On August 4, 2010, Mother was charged with driving on a suspended license.

DCS developed a revised permanency plan on January 18, 2011 with essentially the same requirements as the original plan. The revised plan was ratified by the juvenile court on March 18, 2011.

DCS filed a petition to terminate parental rights, the action at issue in this appeal, in chancery court on March 4, 2011 against both parents.[2] As to Mother, the complaint alleged the following grounds for termination: abandonment by failure to visit, abandonment by failure to support, abandonment by failure to provide a suitable home/lack of concern, persistent conditions, and substantial noncompliance with permanency plan.

The hearing on the termination of Mother's parental rights was held by the chancellor on August 30 and 31, 2011. The evidence presented at the hearing will be set out below as relevant to the issues on appeal. The trial court found that DCS had established grounds for termination by clear and convincing evidence and that termination of Mother's parental rights was in the best interest of Alyssa. DCS was given full guardianship and custody of Alyssa.

---

[2]Father's rights were terminated by the trial court, and he did not appeal that decision.

Mother appeals.

STANDARDS FOR TERMINATION OF PARENTAL RIGHTS

A parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Consequently, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). The termination of a person's parental rights "has the legal effect of reducing the parent to the role of a complete stranger." *In re W.B., IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *6 (Tenn. Ct. App. Apr. 29, 2005). Pursuant to Tenn. Code Ann. § 36-1-113(l)(1), "[a]n order terminating parental rights shall have the effect of severing forever all legal rights and obligations of the parent or guardian of the child against whom the order of termination is entered and of the child who is the subject of the petition to that parent or guardian."

Tennessee's termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, 2005 WL 1021618, at *7 (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). A trial court is only required to find one statutory ground in order to terminate parental rights. *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened standard of proof in these cases, a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654. As

to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

ANALYSIS

1.

Mother's first argument is that the trial court erred in deciding the termination case in light of the pending appeal to circuit court of the juvenile court's dependency and neglect decision.

We note at the outset that this appeal is from the chancery court decision terminating Mother's parental rights. The de novo appeal to circuit court of the juvenile court's decision finding Alyssa to be dependent and neglected is not before this court.[3] Pursuant to Tenn. Code Ann. § 36-1-113(a), the trial court had subject matter jurisdiction in the parental termination action. Mother cites no authority to support her assertion that the trial court was required to postpone a decision on the termination proceeding because of the de novo appeal pending in circuit court concerning the juvenile court's dependency and neglect determination. In previous cases, we have described the distinction between dependency and neglect proceedings and termination proceedings:

> A termination of parental rights proceeding is not simply a continuation of a dependent-neglect proceeding. It is a new and separate proceeding involving different goals and remedies, different evidentiary standards, and different avenues for appeal. The primary purpose of a dependent-neglect proceeding is to provide for the care and protection of children whose parents are unable or unwilling to care for them. The sole purpose of the termination proceeding under Tenn. Code Ann. § 36-1-113 is to sever irrevocably the legal relationship between biological parents and their children.

*In re M.J.B.,* 140 S.W.3d at 651; *see also State v. T.M.B.K.*, 197 S.W.3d 282, 288 (Tenn. Ct.

---

[3]Mother points out that, pursuant to Tenn. Code Ann. § 37-1-159(c), a party who perfects an appeal to circuit court of a decision involving removal of a child from a parent's custody is entitled to an expedited hearing. Since the de novo appeal of the dependency and neglect decision to circuit court is not before this court on appeal, however, we have no knowledge of the status of that de novo appeal or the reasons for the alleged delay in its disposition. By contrast, in *State v. Rogoish*, No. 03A01-9704-CV-00145, 1997 WL 527276, at *2 (Tenn. Ct. App. Aug. 26, 1997), a case cited by Mother, this court addressed the appealing party's right to an expedited hearing in the context of an appeal of the circuit court's disposition.

App. 2006).

We reject Mother's argument. The trial court did not err in proceeding to decide the termination action before the dependency and neglect action pending in another court had been concluded.

2.

Mother next asserts that the trial court erred in finding clear and convincing evidence to support grounds for the termination of her parental rights.

A party seeking the termination of parental rights must prove two elements by clear and convincing evidence: the existence of one of the statutory grounds for termination and that termination is in the child's best interest. *In re M.L.P.*, 281 S.W.3d 387, 392 (Tenn. 2009); *In re Valentine*, 79 S.W.3d at 546; Tenn. Code Ann. § 36-1-113(c). The petition named five grounds for termination of Mother's parental rights: abandonment by failure to visit, abandonment by failure to support, abandonment by failure to provide a suitable home/lack of concern, persistent conditions, and substantial noncompliance with permanency plan. On appeal, DCS waives the grounds of persistent conditions and abandonment by failure to establish a suitable home.[4] Thus, we are left to consider three possible grounds: abandonment by failure to support, abandonment by failure to visit, and substantial noncompliance with the permanency plans.

With respect to the ground of substantial noncompliance with the permanency plan, we find no argument in Mother's brief addressing this issue. Since Mother failed to challenge the trial court's findings as to this ground, we may consider it waived on appeal. *See In re E.M.S.*, No. M2009-00267-COA-R3-PT, 2009 WL 2707399, at *5 (Tenn. Ct. App. Aug. 27, 2009). A trial court is only required to find one statutory ground in order to terminate parental rights. *In re D.L.B.*, 118 S.W.3d at 367.

Moreover, having reviewed all of the evidence before the trial court, we find that clear and convincing evidence supports the trial court's conclusion that Mother failed to substantially comply with the permanency plan requirements, thereby justifying termination of her parental rights under Tenn. Code Ann. § 36-1-113(g)(2). At the hearing, Mother acknowledged that, as of January 2011, she had not complied with the requirements of the permanency plan. She further acknowledged that, during the period from November 1, 2010 through March 4, 2011, she continued to use illegal drugs. Prior to the filing of the

---

[4]DCS concedes that, without a final dependency and neglect order, it cannot terminate Mother's rights on these grounds. *See State v. Hood*, 338 S.W.3d 917, 927 (Tenn. Ct. App. 2009).

termination petition in March 2011, Mother failed multiple drug screens, failed to provide proof of employment or a written budget, incurred an additional criminal charge, failed to complete a mental health evaluation, and failed to follow the recommendations of the alcohol and drug assessment. Mother entered inpatient rehabilitation on March 11, 2011 and was discharged on April 14, 2011. The trial court made the following findings:

> [C]ertainly there was not substantial compliance by the time of the filing of the Department's petition. [Mother] did very little prior to entering treatment and there are a number of requirements, including the budget and a lease of sorts that the Department was seeking, which were not provided prior to this trial. . . . While efforts have been made since the filing of the Petition to Terminate Parental Rights, there was little to no progress at all for more than six (6) months from the time Alyssa was placed in foster care.

At the hearing, Mother emphasized her efforts after she completed drug rehabilitation. She testified at the August 30, 2011 hearing that she was now a completely changed person and was focused on doing whatever was necessary to regain custody of Alyssa. Unfortunately, by the time Mother completed rehab and began making serious efforts at addressing the permanency plan requirements, Alyssa had been in foster care for about nine months and had formed a strong bond with her foster family, with whom she had been living since December 2010. Moreover, even at the time of the last hearing date, Mother was not ready to take custody of Alyssa. Under these circumstances, we find no error in the trial court's finding that Mother was not in substantial compliance with the permanency plan. *See In re A.W.*, 114 S.W.3d 541, 546 (Tenn. Ct. App. 2003) (mother's efforts to address her mental condition two months prior to the termination trial considered to be "too little, too late").

3.

The final issue to be addressed is whether termination of Mother's parental rights was in Alyssa's best interest.

Tennessee Code Annotated § 36-1-113(i) lists factors to be considered by the court in making its best interest determination, and the trial court made specific factual findings regarding the statutory factors:

> Mother has been candid and honest about her substance abuse with this Court. It would appear that she is clean and sober today, albeit dependent upon her parents for support and housing. The testimony was that there is a high probability of relapse for addicts dealing with substance abuse problems as

severe as [Mother's]. The proof is undisputed that for the first seven months that Alyssa was in state's custody, she was not a priority to Mother. That has changed in recent months, but despite the considerable progress Mother has made, she is still struggling and is nowhere near reaching the level of stability that the foster parents are able to provide for Alyssa.

. . . [Mother] failed to maintain regular visitation during the relevant statutory period.

In considering whether a meaningful relationship has otherwise been established between the parent or guardian and the child, the Court notes that Alyssa was twenty-months old when she was placed in foster care. She is now almost three. There were extended periods where there were long lapses in visitation and that is an important developmental stage for a young child. The testimony was that Alyssa views her foster parents as the only family she knows and remembers. This factor weighs in favor of termination of parental rights.

Likewise, the Court must consider the effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition. The proof shows that Alyssa is thriving and well-adjusted in her foster home, and that she is bonded not only with the foster parents but also with their son, who is just a little bit older than Alyssa, and that the children see themselves as siblings. Again, best interest would favor the continued placement with the foster parents rather than disrupting that situation and returning the child to the mother.
. . .

In considering whether the physical environment of the parent's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent consistently unable to care for the child in a safe and stable manner, the Court cannot ignore the numerous failed drug screens in the early months of Alyssa's custody episode. It is unfortunate that Mother began to comply with the permanency plan so late in the game that her sobriety is still short-term and stability not yet established.

The same problem exists in gauging whether the parent's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for

-7-

the child.  If Mother is able to maintain her sobriety, this should not be an issue.  However, as of yet she has not even progressed to the point of unsupervised visits with Alyssa.  She failed to avail herself of the therapeutic visitation services the Department provided in the early months of the case.

The evidence does not preponderate against these findings.

Ascertaining whether termination is in a child's best interest is necessarily a fact-intensive inquiry.  *In re Giorgianna H.*, 205 S.W.3d 508, 523 (Tenn. Ct. App. 2006).  Moreover, the best interest analysis "does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent."  *In re Audrey S.*, 182 S.W.3d at 878.  Rather, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case."  *Id.*

In her brief, Mother does not challenge the trial court's factual findings on best interests or discuss the statutory factors.  Rather, she asserts that the court should not have reached the best interest determination because grounds for termination were not established by clear and convincing evidence.  We have already concluded that grounds for termination were established by clear and convincing evidence.  Furthermore, clear and convincing evidence supports the trial court's determination that termination of Mother's parental rights was in Alyssa's best interest.

CONCLUSION

We affirm the decision of the trial court.  Costs of appeal are assessed against Mother, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE