IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 30, 2015

IN RE T.L.G.

Appeal from the Juvenile Court for Johnson City
No. 42427       Sharon M. Green, Judge

No. E2014-01752-COA-R3-PT-FILED-MAY 26, 2015

In this termination of parental rights case, J.L.B., Jr. (Father), appeals the order terminating his rights to his minor daughter, T.L.G. (the Child). The Department of Children's Services (DCS) removed the Child from the home of her mother, G.M.G. (Mother) after Mother was arrested for domestic violence. DCS took temporary custody and placed the Child in foster care. The Child was subsequently adjudicated dependent and neglected. Some eight months later, DCS filed a petition to terminate each of the parents' rights. After a trial, the court granted the petition.[1] The court found, by clear and convincing evidence, that (1) multiple grounds for termination exist, and (2) termination is in the Child's best interest. Father challenges the finding of grounds for termination, but does not question the court's decision that termination is in the Child's best interest. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

David L. Robbins (on appeal), Johnson City, Tennessee, and James J. Lonon (at trial) Johnson City, Tennessee, for the appellant, J.L.B., Jr.

Herbert H. Slatery, III, Attorney General and Reporter, and Eugenia Izmaylova, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of

---

[1] The petition was also filed against Mother. Prior to trial, Mother voluntarily surrendered her rights to the Child.

Children's Services.

**OPINION**

I.

The Child was born in Ohio to Mother and Father, an unmarried couple, in March 1998. At some later point, Mother moved to Tennessee. During 2005 or 2006, after Mother's four other children were removed from her custody, the Child was sent to live with Father. By then, Father was married and living in Ohio. In 2011, Father was indicted on multiple charges of engaging in criminal sexual conduct with the Child. Following Father's arrest, the Child came to Tennessee to live with Mother and a younger half-sibling.

On January 8, 2012, Child Protective Services investigated a report of a domestic altercation between Mother and the Child, who was then fourteen. As a result of the incident, Mother was arrested and the Child and her half-sibling were taken into DCS's protective custody. On January 12, 2012, DCS filed a petition seeking a dependency and neglect adjudication and temporary custody.

In February 2012, Father was convicted in the Court of Common Pleas, Butler County, Ohio, of five counts of rape, one count of attempted rape, one count of intimidation of a witness, and a misdemeanor count of reckless operation. For the felony offenses, he received an effective sentence of forty-three years in prison, which included both consecutive and concurrent ten-year sentences for the rapes and attempted rape convictions, totaling forty years, plus a consecutive thirty-six month sentence for his conviction on a charge of intimidation of a witness. On appeal, the latter conviction was reversed and vacated, resulting in an effective forty-year sentence. *See State v. B.*, 5 N.E. 3d 1000 (Ohio Ct. App. 2013).

The Child was adjudicated dependent and neglected on August 24, 2012. DCS filed a petition to terminate Father's parental rights on April 16, 2013. Trial on the petition was held on August 15, 2014. Father, who remained incarcerated at the Warren Correctional Institute in Ohio, appeared by telephone. He did not testify. The Child, then sixteen, also did not appear or testify at trial.

The Child had received therapy and counseling since entering state custody. DCS case manager Janis Smith testified that at the time of trial, the Child was "not well" and "having a hard time" emotionally. Since entering foster care, the Child had been moved from regular foster homes, to an agency foster home, and later to a group home. Then, shortly before trial, she attempted suicide while at the group home and was admitted to a

"level four" secure facility reserved for children with severe emotional problems.

Teresa Fletcher, a licensed therapist, testified as an expert witness regarding child victimization, sex abuse treatment, and trauma-focused therapy. She saw the Child during weekly sessions for over a year until mid-July 2014. Ms. Fletcher diagnosed the Child with post-traumatic stress disorder as a result of the sexual victimization events, in addition to issues of physical abuse, abandonment, and a lack of parenting. While testifying, Ms. Fletcher became emotional upon concluding that it was "just very sad" that the Child had gone from initially making strides in a regular foster home to becoming a patient in a mental hospital. She concluded that the Child's struggles with her lack of permanency posed a significant barrier to overcoming her past and progressing in therapy.

At the conclusion of the trial, the court terminated Father's parental rights. The court found that clear and convincing evidence established multiple grounds for termination, to wit: abandonment by wanton disregard, severe child abuse, and a sentence of more than two years' imprisonment for severe child abuse. Also by clear and convincing evidence, the court further found that termination is in the Child's best interest. Father filed a timely notice of appeal.

II.

As taken verbatim from his brief, Father presents the following issue for our review:

> Whether the Trial Court erred in finding that there were grounds for Termination of [Father's] Parental Rights by Clear and Convincing Evidence.

III.

With respect to parental termination cases, this Court has observed:

> It is well established that parents have a fundamental right to the care, custody, and control of their children. While parental rights are superior to the claims of other persons and the government, they are not absolute, and they may be terminated upon appropriate statutory grounds. A parent's rights may be terminated only upon "(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interest[ ] of the child." Both of

-3-

these elements must be established by clear and convincing evidence. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

*In re Angelica S*., E2011−00517−COA−R3−PT, 2011 WL 4553233 at \*11−12 (Tenn. Ct. App. E.S., filed Oct. 4, 2011) (citations omitted).

On our review, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is against those findings. *Id*.; Tenn. R. App. P. 13(d). Great weight is accorded the trial court's judgment of witness credibility, which determinations will not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Questions of law are reviewed de novo with no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741 (Tenn. 2002).

IV.

A.

As earlier noted, the trial court found clear and convincing evidence to support multiple grounds for termination. We address each ground in turn. First, the trial court terminated Father's rights to the Child pursuant to Tenn. Code Ann. § 36-1-113(g)(1)(2014) and Tenn. Code Ann. § 36-1-102(1)(A)(iv)(2014) for abandonment by wanton disregard. As relevant in the present case, the latter section defines this form of "abandonment" to mean that,

> [a] parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

"[P]arental conduct exhibiting wanton disregard for a child's welfare may occur at any time prior to incarceration and is not limited to acts occurring during the four-month period immediately preceding the parent's incarceration." ***Dep't. of Children's Servs. v. Hood***, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009).

The trial court found that the aforementioned statute applied to Father in that he was incarcerated in Ohio at the time the petition was filed. The court further observed:

> [T]he Court of Appeals of the Twelfth Appellate District of Ohio . . . heard the appeal of [Father's] convictions. [T]he opinion details the evidence before the Court and the jury for which the convictions were entered. Further, . . . this opinion notes that the criminal acts of attempted rape and rape were against [Father's] biological daughter . . . the subject child of these proceedings . . . .
>
> The Court finds that [Father's] actions of multiple rapes and attempted rapes of the child, which gave rise to his convictions, and his present incarceration, demonstrates wanton disregard for the welfare of the minor child.

This Court has observed that the fact of a parent's incarceration is not to be considered in isolation. Rather, incarceration

> serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child.

***In re Audrey S***., 182 S.W.3d 838, 866 (Tenn. App. 2005). "We have repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." ***Id***. at 868. Simply stated, a parent's "poor judgment and bad acts that affect the children constitute a wanton disregard for the welfare of the children." ***Hood***, 338 S.W.3d at 926 (citing ***State v. Harville***, No. E2008-00475-COA-R3-PT, 2009 WL 961782, at *7 (Tenn. Ct. App. E.S., filed Apr. 9, 2009)).

In the present case, Father did not testify and there was little evidence pertaining to Father other than the facts prompting his incarceration. Accordingly, the trial court

necessarily and reasonably focused on the evidence of Father's criminal sexual conduct against the Child. The court referenced the proof as set forth in the Ohio appellate decision affirming Father's convictions for rapes and attempted rape of the Child. The opinion reflects that Father engaged in sexual conduct with the Child from 2005, when the Child was eight or nine, until March 2011. At Father's criminal trial, the Child testified that, for years, Father forced her to perform fellatio and that he engaged in intercourse with her on a weekly basis. The incidents usually occurred when Father's wife was at work. The testimony indicated that the abuse ended only after a houseguest walked in and witnessed a sexual incident between Father and the Child. In our view, Father's history of committing such sexual acts against his own child over several years, leading to a lengthy prison sentence, without question reflects a wanton disregard for the Child's welfare.

The evidence does not preponderate against the trial court's findings in support of its determination that "Father abandoned the minor child by exhibiting a wanton disregard [for] her welfare, such that his parental rights should be terminated." The trial court did not err in terminating Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(1), as further defined in Tenn. Code Ann. § 36-1-102(1)(a)(iv).

B.

Continuing to focus on Father's multiple convictions for rape and his conviction for attempted rape, the trial court found additional grounds for termination. Specifically, the court found, by clear and convincing evidence, that Father (1) committed severe child abuse and (2) was sentenced to two or more years in prison for his abuse of the Child.

Tenn. Code Ann. § 36-1-113(g)(4) provides grounds for termination based on a finding of severe child abuse as follows:

> The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition. . . .

The referenced section, Tenn. Code Ann. § 37-1-102, defines "severe child abuse," in pertinent part, to include the following:

> The commission of any act towards the child prohibited by §§ 39-13-502 -- 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005 or the knowing failure to protect

the child from the commission of any such act towards the child[.]

Tenn. Code Ann. § 37-1-102(b)(21)(C)(2014).

In the present case, the trial court noted Father's convictions in Ohio for multiple rapes and an attempted rape of the Child and expressly found that "the acts and conduct of [Father] that led to his incarceration constitute 'severe child abuse' as defined by Tenn. Code Ann. § 37-1-102(b)(21)(C) and Tenn. Code Ann. § 39-13-503(a)." As set forth above, § 39-13-503 (2006) is among the enumerated offenses that constitute "severe child abuse" under Section 37-1-102. Section 39-13-503(a) defines the offense of rape, in relevant part, as the "unlawful sexual penetration of a victim" accompanied by force or coercion or without the victim's consent. The trial court correctly concluded that the rape convictions were properly deemed acts of "severe child abuse" under Tennessee law. The trial court stated:

> The Court specifically finds that it is the commission of the act of rape that is prohibited by Tennessee Code, such that the finding by the Court of Common Pleas of Butler County, Ohio that [Father] committed the act of rape against the minor child constitutes "severe child abuse" under Tennessee law.

In challenging the court's finding of severe child abuse, Father contends that "the Ohio statute under which [he] was convicted does not include the same elements of the offense that . . . Tennessee [law] requires." As a consequence of this fact, according to Father, it follows that the trial court erred in finding that he committed the underlying offense of "rape" to support grounds for termination.

The record reflects that Father was convicted of the offense of rape under Ohio law pursuant to Ohio Rev. Code § 2907.02(A)(1)(b). That section provides, in relevant part, as follows:

> No person shall engage in sexual conduct with another who is not the spouse of the offender . . . , when any of the following applies:
>
> \*     \*     \*
>
> The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

Ohio law defines "sexual conduct" as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." Ohio Rev. Code § 2907.01(A).

We conclude that the trial court properly considered Father's rape convictions in Ohio as acts constituting "severe child abuse" under Tennessee law for purposes of a parental termination proceeding. Father was convicted of five counts of rape by engaging in sexual conduct with the Child while she was under the age of thirteen. The Ohio appellate decision in Father's criminal case was made an exhibit at the hearing on the termination petition. The Ohio Court of Appeals recited the evidence supporting each allegation of rape. As to Count 1, encompassing the years 2005-2006, when the Child was eight or nine, the Court summarized the testimony, as follows:

> [The Child] testified that the first time [Father] raped her, the two were living at a Germantown apartment. She explained: "[m]y dad woke me up, and I had a long shirt on and just my panties, and my dad pulled down my underwear, and then he pulled down his pants, and grabbed my sides, and he stuck in on me. * * * I was crying and screaming, and I was bleeding."

*State v. B.*, 5 N.E.3d at 1010.

In our view, the trial court properly found that Father thereby committed acts that fall within the definition of "rape" under Tenn. Code Ann. § 39-13-503(a). Moreover, the termination petition additionally cited "Severe Child Abuse" under Section 37-1-102(b)(21) as grounds for termination. As set out above, Tenn. Code Ann. § 37-1-102(b)(21), cited in the court's order, defines "severe child abuse" to include other offenses toward a child that is the subject of a termination petition. In addition to rape, enumerated offenses relevant herein include aggravated sexual battery[2] and rape of a child.[3]

In summary, the evidence does not preponderate against the trial court's finding that Father's rape convictions constitute severe child abuse under Tenn. Code Ann. § 37-1-102.

[2]Tenn. Code Ann. § 39-13-504(a)(2014) defines aggravated sexual battery to include unlawful sexual contact with a victim less than thirteen years of age.

[3]Tenn. Code Ann. § 39-13-522(2010) defines rape of a child to include "the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if the victim is more than three (3) years of age but less than thirteen (13) years of age."

The trial court did not err in terminating Father's rights to the Child for severe child abuse.

C.

Lastly, as to grounds for termination, we consider the trial court's finding of grounds pursuant to Tenn. Code Ann. § 36-1-113(g)(5). That section provides, in relevant part, as follows:

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition . . . that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102.

Again relying on Father's convictions for rape and attempted rape of the Child, the trial court found, in relevant part, as follows:

> [T]hese actions constitute severe child abuse as defined by T.C.A. § 37-1-102(b)(21)(C).
>
> DCS has proven, by clear and convincing evidence, that [Father] was convicted and sentenced for actions which constitute severe child abuse as set out in T.C.A. § 36-1-113(g)(5), such that his parental rights should be terminated.

In short, clear, convincing, and overwhelming evidence exists to support the trial court's findings. For his conduct against the Child, Father was sentenced to an effective term of forty years. Exercising its discretion, the Ohio Supreme Court rejected Father's request for second-tier appellate review, and the judgment became final. The trial court did not err in terminating Father's parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(5) based on his sentence of more than two years for conduct against the Child deemed severe child abuse.

V.

Father asserts no challenge to the trial court's decision regarding the best interest of the Child. As we have noted, however, before terminating a parent's rights, a court must determine that two things have been clearly and convincingly proven — "not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). We therefore review the trial court's best interest findings despite the apparent waiver of this

issue.

Our review is guided by reference to the non-exclusive list of statutory factors set out in Tenn. Code Ann. § 36-1-113(i).  We proceed mindful that "the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest."  *Id*. (citing *State v. T. S. W*., No. M2001-01735-COA-R3-JV, 2002 WL 970434 (Tenn. Ct. App. M.S., filed May 10, 2002).   Moreover, the issue of what is in the best interest of a child must be determined from the child's perspective and not the parent's.  *Id.*   (citing *White v. Moody*, 171 S.W.3d at 194).

Here, the trial court set out its best interest analysis as follows:

> It is in the child's best interests for termination to be granted . . . because [Father] has not made changes in his conduct or circumstances that would make it safe for the child to go home. [Father] was incarcerated when the minor child came into DCS custody, and . . . he remains incarcerated serving a sentence of forty (40) years to life in prison.  He has not completed any programs in prison to demonstrate he has effectuated a lasting change to his life.   There is no proof that he had made changes whatsoever.

> It is in the child's best interests for termination to be granted as to [Father] because he has abused or neglected the minor child by perpetrating severe child abuse on her. . . .   The Court finds that this factor weighs heavily against [Father] in this case.

> The . . . list of [statutory] best interest factors . . . is not exhaustive, and . . . the Court may consider other factors when determining whether or not termination of parental rights would be in a child's best interest.

> The Court finds that it is in the best interest of the minor child for termination to be granted as to [Father], in that she is suffering from, and experiencing, great emotional difficulties from trauma.

> *       *       *

> The Court finds that, due to the emotional, psychiatric, and psychological condition of the child, neither reconciliation nor reunification is a therapeutic goal for her.   Further, the Court

finds that, if the minor child had any contact with her father, it would cause her undue distress.

The evidence does not preponderate against the trial court's findings. Rather, it clearly and convincingly supports what the trial court decreed. Without question, there is clear and convincing evidence to show that the Child's interest is best served by permanently severing Father's parental ties to the Child. We therefore affirm the trial court's best interest decision in favor of termination.

## VI.

The judgment of the trial court terminating Father's parental rights to the Child, T.L.G., is affirmed. Costs on appeal are taxed to the appellant, J.L.B., Jr. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE