FILED
04/25/2018
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 2, 2018

IN RE KYLE F.

Appeal from the Juvenile Court for Sullivan County
No. 16-JV-41643    Raymond C. Conkin, Jr., Judge

_____

No. E2017-01821-COA-R3-PT
_____

This is a termination of parental rights case involving a two-year-old child, Kyle F. ("the Child"). In January 2016, the Sullivan County Juvenile Court ("trial court") granted temporary legal custody of the Child to the Tennessee Department of Children's Services ("DCS"). The Child was immediately placed in foster care, where he has remained since that date. DCS subsequently filed a petition to terminate the parental rights of the Child's mother, Debra F. ("Mother"), on September 19, 2016.[1] Following a bench trial, the trial court determined that DCS had failed to prove by clear and convincing evidence that Mother had abandoned the Child through conduct exhibiting a wanton disregard for the welfare of the Child prior to her incarceration. Determining that no statutory ground existed for termination of Mother's parental rights, the trial court declined to address the best interest of the Child. The guardian *ad litem* timely filed a notice of appeal. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jessica Newhart, Kingsport, Tennessee, Guardian Ad Litem for Kyle F., appellant.

Randall D. Fleming, Kingsport, Tennessee, for the appellee, Debra F.

Herbert H. Slatery, III, Attorney General and Reporter, and Jordan K. Crews, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.[2]

---

[1] DCS is seeking termination of a putative father's parental rights in a separate action, and he is not involved in this appeal.

[2] By letter dated January 5, 2018, counsel for DCS notified this Court that upon a review of the guardian

# OPINION

## I. Factual and Procedural Background

In June 2011, Mother was convicted of two counts of grand larceny and one count of unlawful possession of a firearm. Based on those convictions, Mother was sentenced to five years of imprisonment for each conviction, with four years and six months of each sentence to be suspended with the sentences running concurrently. Mother was placed on supervised probation for a period of two years, to be followed by two years of unsupervised probation.

In September 2015, Mother's probation officer filed a "Major Violation Report" with the Wise County Circuit Court ("Wise County court") in Virginia, alleging that Mother had violated the terms of her probation. Mother entered a plea of "not guilty." Following an evidentiary hearing on November 23, 2015, the Wise County court found that Mother was guilty of violating the rules of her probation. Due to the probation violation, the Wise County court sentenced Mother to two years of incarceration for each of the three counts, which were to run concurrently. The Wise County court's order does not state with particularity which rules of probation Mother had violated.

On December 4, 2015, Mother pled guilty to and was further convicted of two counts of violation of probation in the Scott County Circuit Court ("Scott County court") located in Virginia. Consequently, Mother was sentenced to one year of incarceration for each count, to be served concurrently with each other but consecutive to the Wise County convictions. The Scott County court judgment does not identify the reasons for Mother's probation violation or the underlying offenses that led to Mother's probation.

Courtney Buck, the Child's DCS case manager, testified that Mother's probation was violated because she failed to report an address change to her probation officer after she changed residences. According to Ms. Buck, Mother was approximately six months into her pregnancy with the Child when she became incarcerated. While incarcerated due to her probation violation, Mother was prescribed Suboxone and subsequently gave birth to the Child in January 2016.[3] Upon birth, the Child was transferred to the neonatal intensive care unit at Holston Valley Hospital in Kingsport, Tennessee. According to Ms. Buck, the Child was born with Neonatal Abstinence Syndrome due to Mother's prenatal use of Suboxone. Shortly after the Child's birth, the trial court ordered that

---

*ad litem*'s brief filed in this matter, counsel "ha[d] concluded that, unless the Court so order[ed], filing a brief [was] unnecessary."

[3] The record contains no evidence demonstrating why Mother was prescribed Suboxone while incarcerated or whether there was prenatal drug use by Mother prior to her incarceration.

custody of the Child be placed with DCS. In February 2016, the trial court found that the Child was dependent and neglected due to "the situation of the mother" and ordered that the Child would remain in the custody of DCS.

On September 19, 2016, DCS filed a petition seeking to terminate Mother's parental rights to the Child, alleging in part that Mother had abandoned the Child because she had engaged in conduct that exhibited a wanton disregard for the welfare of the Child prior to her incarceration. Following a trial on the merits, the trial court determined that DCS failed to meet its burden of proof on this ground. Because it did not find that a statutory ground existed to terminate Mother's parental rights, the trial court declined to conduct an analysis concerning the best interest of the Child. The trial court denied DCS's petition. The guardian *ad litem* timely appealed.

## II. Issue Presented

The guardian *ad litem* presents one issue for our review, which we have restated as follows:

> Whether the trial court erred by finding that DCS had not proven, by clear and convincing evidence, the statutory ground of abandonment through Mother's conduct exhibiting a wanton disregard for the welfare of the Child prior to Mother's incarceration.

## III. Standard of Review

In a termination of parental rights case, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed *de novo* upon the record, accompanied by a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *see In re Carrington H.*, 483 S.W.3d 507, 524 (Tenn. 2016); *In re F.R.R., III*, 193 S.W.3d at 530. Questions of law, however, are reviewed *de novo* with no presumption of correctness. *See In re Carrington H.*, 483 S.W.3d at 524 (citing *In re M.L.P.*, 281 S.W.3d 393 (Tenn. 2009)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002).

"Parents have a fundamental constitutional interest in the care and custody of their children under both the United States and Tennessee constitutions." *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002). It is well established, however, that "this right is not absolute and parental rights may be terminated if there is clear and convincing evidence

justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). As our Supreme Court has recently explained:

> The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of ["]severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(l)(1); *see also Santosky*, 455 U.S. at 759 (recognizing that a decison terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty, N.C.*, 452 U.S. 18, 27 (1981) (discussing the due process right of parents to fundamentally fair procedures).

> Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof—clear and convincing evidence. *Santosky*, 455 U.S. at 769. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted). The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

> * * *

> In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97.

*In re Carrington H.*, 483 S.W.3d at 522-24. "[P]ersons seeking to terminate [parental] rights must prove all the elements of their case by clear and convincing evidence,"

including statutory grounds and the best interest of the child. *See In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010).

## IV. Statutory Ground of Abandonment through Wanton Disregard

Tennessee Code Annotated § 36-1-113 (2017) lists the statutory requirements for termination of parental rights, providing in relevant part:

> (a)    The chancery and circuit courts shall have concurrent jurisdiction with the juvenile court to terminate parental or guardianship rights to a child in a separate proceeding, or as a part of the adoption proceeding by utilizing any grounds for termination of parental or guardianship rights permitted in this part or in title 37, chapter 1, part 1 and title 37, chapter 2, part 4.
>
> * * *
>
> (c)    Termination of parental or guardianship rights must be based upon:
>
> > (1)    A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> >
> > (2)    That termination of the parent's or guardian's rights is in the best interests of the child.

The Child's guardian *ad litem* contends that the trial court erred by finding that DCS had not proven by clear and convincing evidence that Mother had abandoned the Child through her actions prior to incarceration that allegedly constituted a wanton disregard for the Child's welfare. *See* Tenn. Code Ann. § 36-1-102(1)(A)(iv) (2017). Upon a thorough review of the record, we disagree.

Tennessee Code Annotated § 36-1-113(g)(4), as relevant to this issue, provides:

> (g)    Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> > (1)    Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

Tennessee Code Annotated § 36-1-102(1)(A)(iv) provides in pertinent part:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . <u>the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child</u> . . . .

(Emphasis added.)

A parent's actions constituting wanton disregard for the welfare of a child are not restricted to only the four-month period prior to incarceration. *See In re Audrey S.,* 182 S.W.3d 838, 871 (Tenn. Ct. App. 2005). This Court has consistently held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.,* 182 S.W.3d at 867-68; *see also In re K.F.R.T.,* No. E2015-01459-COA-R3-PT, 2016 WL 908926, at *4 (Tenn. Ct. App. Mar. 10, 2016). "Simply stated, a parent's 'poor judgment and bad acts that affect the children constitute a wanton disregard for the welfare of the children.'" *In re T.L.G.*, No. E2014-01752-COA-R3-PT, 2015 WL 3380896, at *3 (Tenn. Ct. App. May 26, 2015) (quoting *State, Dep't of Children's Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009)).

In the case at bar, Mother was convicted in June 2011 of two counts of grand larceny and one count of unlawful possession of a firearm, with the incident giving rise to the conviction occurring years before the Child was even conceived. A court cannot find that a parent's conduct constituted wanton disregard for the Child's welfare if the parent has no knowledge of the child's existence. *See In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015) ("Logically, a person cannot disregard or display indifference about someone whom he does not know exists."). We note that a parent's conduct prior to the Child's birth can constitute wanton disregard for the Child's welfare so long as that parent was aware of the Child's existence *in utero*. *See id.* ("[W]hile the statutory reference to 'the child' can mean a child *in utero,* the wanton disregard language of Tenn. Code Ann. § 36-1-102(1)(A)(iv) must be construed to require that the father has knowledge of the child at the time his actions constituting wanton disregard are taken.").

Because some of Mother's criminal convictions were a result of behavior occurring well before the Child was conceived, Mother's only criminal history at issue is comprised of the violations of probation that occurred in 2015 while Mother was

pregnant with the Child. The only evidence contained in the record regarding Mother's probation violations are the respective court orders from the Wise County and Scott County courts and the testimony of Ms. Buck. Although the court orders do not specify which rules of probation Mother had violated, Ms. Buck testified that Mother's violations were due to Mother's failure to provide notice regarding a change of address to her probation officer after she had changed residences. No evidence was presented to contest Ms. Buck's account. We note that the record does not contain evidence regarding the amount of time that elapsed between when Mother changed residences and when her probation was violated or any other circumstances surrounding the violations.

Since the Child's birth, Mother has remained in contact with DCS, updating the case manager with her location each time she was transferred between prisons in Virginia; written several letters to DCS inquiring as to the Child's welfare; and participated in several child and family team meetings with DCS. While in prison, Mother had participated in alcohol and drug classes, parenting classes, and GED classes. She also maintained employment during her incarceration.

In a case with similar factual circumstances, this Court has recently determined:

Consequently, our review of the record indicates that the following bad conduct by Father occurred after the child's conception/birth: the violation of Father's probation based on his failure to report for intake to community corrections on June 3, 2015 and failure to keep in touch with his probation officer as required by the terms of his probation.

DCS cites *In re Chyna L.M.D.*, No. E2012-00661-COA-R3-PT, 2012 WL 3776699 (Tenn. Ct. App. Aug. 31, 2012), arguing that even a single instance of bad conduct can lead to a finding of abandonment by wanton disregard. In that case, the father was released on probation prior to the child's birth but subsequently violated his probation. *Id.* at *5. As an alternative to being sent back to prison, Father was given an offer of enhanced probation so that he could remain in the community and participate in the child's life. *Id.* However, father, with knowledge that the mother was pregnant with his child, behaved in such a way at the hearing to cause the offer of enhanced probation to be withdrawn. *Id.* As a result, father was sent to prison to serve the remainder of his eight-year sentence. *Id.* at *1, 5.

Father's conduct in this case is distinguishable from the father's conduct in *In re Chyna L.M.D.* Unlike the facts in *In re Chyna L.M.D.*, where no evidence of any redeeming factors was presented, the record in this case shows that Father visited with the child every day during the

- 7 -

thirty-five days in 2015 when he was released on house arrest. During the same period of time when Father failed to report for intake, Father also provided for the child rather than ignored his parental duties. This is not a case where Father totally neglected his parental duties in order to further his criminal enterprises. *See, e.g.*, *In re K.F.R.T.*, 493 S.W.3d 55, 61 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. June 6, 2016) (affirming the ground of wanton disregard because "the father . . . was arrested for theft, multiple D.U.I. offenses, repeated traffic offenses, domestic violence against the biological mother of the children central to this appeal, multiple illegal border crossings, and even extortion" resulting in "multiple incarcerations and/or deportations"); *In re Jocilyn M.P.*, 435 S.W.3d 773, 787 (Tenn. Ct. App. 2014) (affirming the ground of wanton disregard, which was evidenced by father's "criminal behavior, continued incarcerations, drug abuse, failing to meet the child's material needs, his disrespect for authority, conspiring in an armed robbery of another drug dealer/felon, while the child and her two half-siblings and the child's mother were in the home, and the demonstration of a general lack of concern towards this child"). Moreover, although Father's initial conviction was drug-related, there is no evidence that Father continued to abuse drugs after the child's birth. Even if the totality of Father's decisions ultimately prevented him from having a relationship with his child, his one poor decision, without more, does not rise to the level of "unrestrainedly excessive" disregard for the child. *See The American Heritage College Dictionary* 1544-45 (4th ed.) (defining "wanton" as "[u]nrestrainedly excessive"). Rather, Father by his conduct showed that he was willing to care for the child. Under these circumstances, we do not believe that the evidence of Father's one violation of probation based on failure to report establishes by clear and convincing evidence that Father abandoned the child by displaying wanton disregard for the welfare of the child. *See In re Renaldo M.*, No. M2016-00472-COA-R3-PT, 2017 WL 1041541, at *5 (Tenn. Ct. App. Feb. 7, 2017), *app. denied* (Tenn. Feb. 7, 2017) (reversing the trial court's finding of abandonment by wanton disregard because "[t]he record shows that, despite the lapses in her behavior, [m]other has shown a great deal of care and concern for the children, and she has made a genuine effort to establish a meaningful relationship with them" such as "complet[ing] tasks on the permanency plan, spen[ding] $800.00 on parenting classes, and attend[ing] every visitation with the children that she was permitted"); *In re Dylan M. J.*, No. M2010-01867-COA-R3-PT, 2011 WL 941404, at *8 (Tenn. Ct. App. Mar. 17, 2011) (reversing the trial court's finding of wanton disregard because, "despite the regrettable lapses in [father's] behavior, [f]ather has shown a great deal of care and concern for his son, and he has made a genuine effort to establish a meaningful relationship with him"). As a

result, we reverse the trial court's termination of Father's parental rights on the ground of abandonment by wanton disregard for the child's welfare.

*In re E.C.*, No. E2016-02582-COA-R3-PT, 2017 WL 2438574, at *12-13 (Tenn. Ct. App. June 6, 2017).

Similarly, in this case, Mother's action of failing to provide her probation officer with her updated address, without more, does not rise to the level of wanton disregard for the Child's welfare. As in *In re E.C.*, we determine that Mother's failure to provide an updated address to her probation officer that resulted in her probation violations, in combination with her other conduct, do not support a finding by clear and convincing evidence that Mother abandoned the Child by exhibiting a wanton disregard for the Child. *See id.* Moreover, having determined that DCS failed to prove a statutory ground for termination of parental rights by clear and convincing evidence, the trial court properly declined to conduct a best interest analysis. *See In re Audrey S.*, 182 S.W.3d at 877. We therefore affirm the judgment of the trial court.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. Costs on appeal are assessed to the State of Tennessee, Department of Children's Services. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE