IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 3, 2020

IN RE KASH F.[1]

**Appeal from the Juvenile Court for Grainger County**
**No. 2018-JV-66     Steven Lane Wolfenbarger, Judge**

_____

**No. E2019-02123-COA-R3-PT**

_____

This action involves the termination of a mother's parental rights to her minor child. Following a bench trial, the trial court found that clear and convincing evidence existed to establish the following statutory grounds of termination: (1) wanton disregard for the child's welfare; (2) substantial noncompliance with the permanency plan; (3) severe child abuse; and (4) failure to manifest an ability and willingness to parent. The court also found that termination was in the best interest of the child. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and W. NEAL MCBRAYER, J. joined.

Jordan Long, Knoxville, Tennessee, for the appellant, Kendall F.

Herbert H. Slatery, III, Attorney General & Reporter, and Lexie A. Ward, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

**I.     BACKGROUND**

Kash F. ("the Child") was born to Kendall F. ("Mother") in July 2018.[2] The Tennessee Department of Children's Services removed the Child within three days of the

_____

[1] This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

Child's birth due to an allegation of severe child abuse based upon Mother's drug use while pregnant. Mother and the Child tested negative for all illegal substances at the time of birth; however, the Child's umbilical cord tested positive for Benzodiazepines and THC. The Child was placed into foster care and was later adjudicated as dependent and neglected and a victim of severe child abuse through drug exposure. Mother did not appeal the finding of severe child abuse.

DCS developed two permanency plans in this case, one dated August 16, 2018, and one dated February 8, 2019. The plans each contained the following requirements: (1) complete an alcohol and drug assessment and comply with recommendations; (2) complete a mental health assessment and follow recommendations; (3) complete a parenting assessment and follow recommendations; (4) complete domestic violence classes; (5) obtain and maintain suitable housing, income, and transportation; (6) remedy legal issues and comply with probation; (7) pay child support; and (8) submit to and pass random drug screens. Each plan was signed by Mother and ratified by the trial court. A third plan was later developed on August 9, 2019, which added two responsibilities, namely (1) create a relapse prevention plan and (2) comply with DCS home visits.

Mother did not complete the majority of the requirements and was incarcerated from November 28, 2018, through April 25, 2019, based upon a probation violation for, inter alia, (1) failing a drug screen; (2) not remitting payment as required; (3) failure to maintain employment; and (4) admitted drug use. Mother's probation violation stemmed from the following criminal convictions in August 2017: possession of drug paraphernalia, possession of a Schedule IV controlled substance; and driving on a revoked or suspended license. In April 2018, Mother was convicted of a probation violation and theft under $1,000, resulting in her serving three weeks in jail while pregnant with the Child.

DCS filed a petition to terminate Mother's parental rights on June 27, 2019, based upon the statutory grounds of (1) wanton disregard for the child's welfare; (2) substantial noncompliance with the permanency plan; (3) severe child abuse; and (4) failure to manifest an ability and willingness to parent. Mother was arrested approximately 13 days before the scheduled hearing and spent one night in jail for theft of $15 at her place of employment.

The case proceeded to a hearing on October 31, 2019, at which several witnesses testified. Three DCS caseworkers testified concerning Mother's failure to complete the requirements of the permanency plan and to assume custody of the Child. Mother's criminal history and drug use, specifically while pregnant, were also introduced for the

---

[2] The putative father signed a waiver of interest and is not a party to this appeal.

court's consideration. In January 2012, Mother gave birth to a child who tested positive for marijuana, methadone, and benzodiazepines. Mother also tested positive for amphetamines, benzodiazepines, and THC while pregnant with another child who died during childbirth in 2016. Likewise, Mother tested positive for amphetamines, benzodiazepines, and suboxone while pregnant with the Child in April 2018. Mother admitted to approximately ten years of drug abuse. She claimed that she has since addressed her drug addiction and was now ready to care for the Child.

Ashley Peters, the Child's first DCS caseworker, testified that she began supervising visitation after Mother cursed at Foster Mother and "caused a lot of havoc" in the home during supervised visitation. She submitted a request for in-home services for Mother to assist her in securing services and completing the requirements of her permanency plan. She further advised Mother concerning DCS's ability to provide transportation to and from appointments as needed. She even provided Mother with a planner to track her appointments and moved visitation to Mother's residence to ensure her attendance. She recalled one visitation in which Mother's friend, Kevin, was in attendance. She stated that Mother and Kevin were falling asleep during the visitation, prompting her to initiate a drug screen. The drug screen was negative, despite Mother's inability to converse or provide adequate supervision for the Child.

Ms. Peters testified that some services were discontinued when Mother was incarcerated in November 2018. She stated that throughout her involvement in the case, Mother failed to complete the significant requirements of the permanency plan, namely resolve legal issues, complete assessments, and pass drug screens. She admitted that Mother passed the drug screens provided by DCS but failed a drug screen taken as part of her probation in November 2018, leading to her incarceration.

Ms. Peters testified that the Child was doing well in his adoptive placement, where he was provided with plenty of clothing, food, and other necessaries. She observed a bond between him and his foster family.

Samara Dixon testified that she served as the Child's DCS caseworker from May through August 2019. She recalled that Mother tested positive for THC on August 9, 2019.[3] She acknowledged that Mother had completed the parenting assessment but that her in-home family support services were ended as result of Mother's failure to participate. She confirmed that she had difficulty maintaining contact with Mother but stated that Mother's visitations went fairly well.

---

[3] Mother explained that she consumed gummy bears with CBD oil. She claimed that she was unaware that the treats contained THC and would result in a positive screen.

Maria Weir testified that she was assigned the Child's case in August 2019 and has served in that capacity since that time. She confirmed that she also had difficulty maintaining contact with Mother but agreed that the visit she supervised went well. She asserted that she has attempted to facilitate services on Mother's behalf in her limited tenure as the Child's caseworker.

Mother, who appeared late at the hearing, confirmed her drug abuse history but claimed that she only used one time while pregnant with the Child. She testified that she has been diagnosed with post-traumatic stress disorder and anxiety but denied the need for mental health treatment. She stated that she is currently living with a friend but that there was room for the Child should she regain custody. She claimed that she has a new job, starting in the morning. She recalled that she passed the majority of the drug screens provided by DCS prior to her incarceration and that she attended a drug rehabilitation program following her incarceration. She was released from the program early as a result of her progress. She recalled that she attended all but one parenting class and that she was also working to complete her domestic violence classes prior to her incarceration. She provided that she attends visitation regularly and was willing to complete any recommendations from her required assessments. She further testified concerning her love and concern for the Child and her desire to care for him as his mother. She conceded that she has not regularly remitted child support and that she was not currently receiving mental health treatment as recommended.

Foster Mother confirmed that the Child is doing well in her home. She expressed her love and concern for the Child and her intent to adopt should he become available. She recalled that she supervised visitation at one time but that she later requested assistance due to Mother's behavior. She has since resumed her supervision of visitation in an attempt to repair the relationship. She agreed that Mother's visitation with the Child has gone "pretty well" since that time.

Following the hearing, the trial court granted the termination petition in its entirety on the grounds alleged by DCS. The court also found that termination was in the best interest of the Child. This timely appeal followed.

## II. ISSUES

The issues necessary to our resolution of this appeal are as follows:

A.      Whether clear and convincing evidence supports the court's termination based upon a finding of abandonment related to Mother's conduct prior to incarceration pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

B.      Whether clear and convincing evidence supports the court's termination based upon a finding of substantial noncompliance with the permanency plan pursuant to Tennessee Code Annotated section 36-1-113(g)(2).

C.      Whether clear and convincing evidence supports the court's termination based upon a finding of severe child abuse pursuant to Tennessee Code Annotated section 36-1-113(g)(4).

D.      Whether clear and convincing evidence supports the court's termination based upon a finding of failure to manifest an ability and willingness to parent pursuant to Tennessee Code Annotated section 36-1-113(g)(14).

E.      Whether clear and convincing evidence supports the court's finding that termination was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
>
> (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2016, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). Under Rule 13(d), appellate courts review factual findings de novo on the record

and accord these findings a presumption of correctness unless the evidence preponderates otherwise. In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness.

*In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (internal citations omitted).

## IV.   DISCUSSION

### A.

Parental rights may be terminated if the parent has been incarcerated during all or part of the four months immediately preceding the filing of the termination petition and has engaged in conduct prior to incarceration that exhibits a wanton disregard for the child's welfare. Tenn. Code Ann. § 36-1-102(1)(A)(iv). To prove this ground, DCS must establish that (1) Mother was incarcerated at the time the termination petition was filed or within the preceding four-month period and that (2) she engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child. Tenn. Code Ann. § 36-1-102(1)(A)(iv); *In re Kason C.*, No. M2013-02624-COA-R3-PT, 2014 WL 2768003, *5 (Tenn. Ct. App. June 17, 2014).

Here, Mother was incarcerated from November 2018 through April 2019. The termination petition was filed on June 27, 2019, thereby establishing that Mother was incarcerated during part of the four months preceding the filing of the petition. This court has held that such conduct may occur at any time prior to incarceration and is not limited to acts occurring during the four-month period immediately preceding the incarceration. *State of Tenn., Dep't. of Children's Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009). We have held on numerous occasions that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *In re Audrey S.*, 182 S.W.3d at 867-68. The record overwhelmingly establishes Mother's wanton disregard for the Child's welfare. Mother admitted to drug use while pregnant with the Child. Further, she engaged in criminal behavior while the Child was in DCS custody, resulting in the

violation of her probation and hindering her ability to complete the requirements of her permanency plan. With these considerations in mind, we conclude that there was clear and convincing evidence to establish that Mother engaged in behavior prior to her incarceration that exhibited a wanton disregard for the Child's welfare.

## B.

Tennessee law requires the development of a plan of care for each foster child and further requires that the plan include parental responsibilities that are reasonably related to the plan's goal. Tenn. Code Ann. § 37-2-403(a)(2)(A). A ground for termination of parental rights exists when a petitioner proves by clear and convincing evidence that "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan." Tenn. Code Ann. § 36-1-113(g)(2). To establish noncompliance, the trial court must initially find "that the requirements of the permanency plans are reasonable and related to remedying the conditions that caused the child to be removed from the parent's custody in the first place." *In re M.J.B.*, 140 S.W.3d at 656; *see In re Valentine*, 79 S.W.3d at 547. When the trial court does not make such findings, the appellate court should review the issue de novo. *In re Valentine*, 79 S.W.3d at 547. Second, the court must find that the parent's noncompliance is substantial, *In re M.J.B.*, 140 S.W.3d at 656, meaning that the parent must be in "noncompliance with requirements in a permanency plan that are reasonable and related to remedying the conditions that warranted removing the child from the parent's custody." *In re Z.J.S.*, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *12 (Tenn. Ct. App. June 3, 2003). To assess a parent's substantial noncompliance with a permanency plan, the court must weigh "both the degree of noncompliance and the weight assigned to that particular requirement." *Id.* Conversely, "[t]erms which are not reasonable and related are irrelevant, and substantial noncompliance with such terms is irrelevant." *In re Valentine*, 79 S.W.3d at 548-49. "Substantial" is defined as "of real worth and importance," Black's Law Dictionary (11th ed. 2019), and "the real worth and importance of noncompliance should be measured by both the degree of noncompliance and the weight assigned to that requirement." *In re Valentine*, 79 S.W.3d at 548.

Notably, this ground for termination does not require that DCS "expend reasonable efforts to assist a parent in complying with the permanency plan requirements." *In re Skylar P.*, No. E2016-02023-COA-R3-PT, 2017 WL 2684608, at *7 (Tenn. Ct. App. June 21, 2017); *see also In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015) ("[I]n a termination proceeding, the extent of [the Department's] efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

Here, Mother was tasked with completing the following requirements: (1) complete an alcohol and drug assessment and comply with recommendations; (2) complete a mental health assessment and follow recommendations; (3) complete a parenting assessment and follow recommendations; (4) complete domestic violence classes; (5) obtain and maintain suitable housing, income, and transportation; (6) remedy legal issues and comply with probation; (7) pay child support; (8) submit to and pass random drug screens; (9) create a relapse prevention plan; and (10) comply with DCS home visits. While Mother made some progress on her permanency plan, she failed to remedy her legal issues and incurred new charges, lessening her ability to complete the requirements of the plan. She also failed to remit child support, pass random drug screens, and provide proof of income. She was likewise required to complete a new drug assessment following her incarceration. She has yet to complete the assessment and was arrested for theft days before the hearing. With these considerations in mind, we conclude that there was clear and convincing evidence to establish Mother's substantial noncompliance with the requirements of the permanency plan.

C.

The trial court may terminate parental rights based upon a finding of severe child abuse against any child either as found "under any prior order of a court" or as "found by the court hearing the petition to terminate parental rights." Tenn. Code Ann. § 36-1-113(g)(4). Here, the trial court found clear and convincing evidence in support of this statutory ground of termination based upon a prior court order adjudicating the Child as a victim of severe child abuse. The finding of severe abuse is "a final decision, which the [parent] is barred from challenging" when the parent had a full and fair opportunity to litigate the issue of severe abuse in the prior suit and did not appeal. *State Dep't of Human Servs. v. Tate*, No. 01-A-01-9409-CV-00444, 1995 WL 138858, at \*5 (Tenn. Ct. App. Mar. 31, 1995). Mother did not appeal the court's finding of severe child abuse. Accordingly, the order became a final order and may be relied upon pursuant to Tennessee Code Annotated section 36-1-113(g)(4). With these considerations in mind, we uphold the court's finding of severe child abuse.

D.

The trial court found that DCS had proven by clear and convincing evidence that Mother's parental rights should be terminated pursuant to Tennessee Code Annotated section 36-1-113(g)(14), which provides as follows:

A legal parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). This ground requires the petitioner to prove two elements by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1), (g)(14). First, a petitioner must prove that the parent failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child." Tenn. Code Ann. § 36-1-113(g)(14). Second, a petitioner must prove that placing the children in the parent's "legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child." *Id.*

There is a split in authority regarding the proof required to establish the first element, specifically, whether parental rights can be terminated under section 36-1-113(g)(14) if a parent has manifested a willingness, but not an ability. *Compare In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at *7 (Tenn. Ct. App. May 31, 2018), *with In re Amynn K.*, No. E2017-01866-COA-R3-PT, 2018 WL 3058280, at *12-15 (Tenn. Ct. App. June 20, 2018). In cases like this one where the parent has manifested neither a willingness nor an ability to assume custody or responsibility, we have upheld termination of parental rights on this ground. *See, e.g.*, *In re J'Khari F.*, No. M2018-00708-COA-R3-PT, 2019 WL 411538, at *15 (Tenn. Ct. App. Jan. 31, 2019) (noting both *In re Ayden S.* and *In re Amynn K.* but ultimately concluding that the petitioner presented sufficient evidence that "Mother was not able or willing to assume physical or legal custody of or financial responsibility for the Child"); *In re Colton B.*, No. M2018-01053-COA-R3-PT, 2018 WL 5415921, at *9-10 (Tenn. Ct. App. Oct. 29, 2018) *perm. app. denied* (Tenn. Jan. 22, 2019) (noting the split in authority but holding that it was unnecessary to adopt one approach because the parent had manifested neither an ability nor a willingness to assume custody or financial responsibility).

As to the second element, whether placing the child in the parent's custody "would pose a risk of substantial harm to the physical or psychological welfare of the child," we have explained:

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While

the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at *8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray*, 83 S.W.3d at 732).

While Mother expressed a willingness to assume responsibility for the Child at the hearing, her failure to act prior to the filing of the termination petition did not support her claims or indicate any evidence of an ability to assume responsibility. Indeed, Mother was incarcerated as a result of a probation violation while the Child was in DCS custody and was arrested once again days before the termination hearing. The record further supports a finding that placing him with her would pose a risk of substantial harm to his physical or psychological welfare given her failure to adequately address her drug abuse and his current placement in an adoptive home, the only home he has ever known. We affirm the court's finding on this issue.

## D.

Having concluded that there was clear and convincing evidence supporting at least one statutory ground of termination, we must consider whether termination was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

> (i)     In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:
>
> > (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> >
> > (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;[4]

---

[4] *In re Kaliyah S.*, 455 S.W.3d at 555 ("[I]n a termination proceeding, the extent of DCS's efforts to reunify the family is weighed in the court's best-interest analysis, but proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent.").

- 11 -

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

We acknowledge Mother's current efforts to rehabilitate herself and her desire to maintain a relationship with the Child. However, the fact remains that Mother violated her probation and was incarcerated while the Child was in DCS custody. She has since been arrested yet again in the days before the termination hearing. Tenn. Code Ann. § 36-1-113(i)(1), (2). Meanwhile, the Child has bonded with those in his foster home and is thriving. The Child should be allowed to achieve permanency and stability in his current home. A change of caretakers at this point in the Child's life would be detrimental to his emotional condition when his adoptive home is the only home he has ever known. Tenn. Code Ann. § 36-1-113(i)(5). Questions remain as to her ability to provide a safe and stable home for the Child as evidenced by her criminal activity and failure to seek mental health treatment. Tenn. Code Ann. § 36-1-113(i)(7), (8). She has also failed to remit child support as required. Tenn. Code Ann. § 36-1-113(i)(9). With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Mother's parental rights was in the best interest of the Child. We affirm the trial court.

## V.    CONCLUSION

The judgment of the trial court is affirmed. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Kendall F.

_____
JOHN W. McCLARTY, JUDGE