IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 1, 2024

## IN RE REMINGTON C., ET AL.

**Appeal from the Warren County Chancery Court**
**No. 793-A     Larry B. Stanley, Jr., Chancellor**

_____

**No. M2023-00983-COA-R3-PT**

_____

In this parental termination case, the paternal grandparents filed a petition to terminate the mother's parental rights to her four children, alleging several grounds for termination. The trial court found that one ground for termination had been proven and that termination of the mother's parental rights was in the children's best interests. Based on these findings, the court terminated the mother's parental rights. The mother appeals. We affirm the trial court's finding that the termination ground of abandonment by wanton disregard pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv)(c) has been proven and that termination of the mother's parental rights is in the children's best interests. Accordingly, we affirm the termination of the mother's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and JOHN W. MCCLARTY, J., joined.

J. Patrick Hayes, Cookeville, Tennessee, for the appellant, Miranda C.[1]

John D. Drake, Murfreesboro, Tennessee, for the appellees, Brenda J. and Buddy J.

**OPINION**

**FACTS AND PROCEDURAL HISTORY**

Miranda C. ("Mother") is the biological mother of Remington C., born in November 2012, Colton C., born in October 2013, Caspain W., born in September 2014, and Lazarus

---

[1] This court has a policy of protecting the identity of children by initializing the last names of the children, parents, close relatives, and pre-adoptive parents and by not providing the children's exact birth dates.

W. born in August 2018 ("the Children"). Mother is married to Haskel C., who is the legal father of all the Children and the biological father of Remington C. and Colton C. Donald W. is the biological father of Caspain W. and Lazarus W.

Petitioner Brenda J. is the mother of Donald W. and grandmother of two of the children at issue in this petition. Brenda J.'s co-petitioner, Buddy J. (collectively "Petitioners") is her husband.

With the exception of Lazarus W., who came to reside with Petitioners in early January 2019, Petitioners gained physical custody of the Children in December 2018. Pursuant to an order entered on March 19, 2019, the Juvenile Court of Warren County ordered that Brenda J. and Buddy J. be awarded legal and physical custody of the Children. Petitioners have maintained legal and physical custody of the Children ever since.

Mother was incarcerated in February of 2019 and then from April 2019 to May 2022. Specifically, she was incarcerated in federal prison on charges of conspiracy to commit wire fraud and interstate transport of stolen property from April 2019 to January 2022. Then, upon her release from federal prison, Mother served four more months in jail in Louisiana from January 2022 to May 2, 2022.

On February 3, 2021, Petitioners initiated this action by filing a petition for termination of parental rights and adoption in the Chancery Court of Warren County ("the trial court"). Therein, Petitioners alleged that Mother had abandoned the Children within the meaning of Tennessee Code Annotated § 36-1-102(1)(A)(i) and (iii) by failing to "provid[e] appropriate and proper care for the children" and failing to "visit and support the minor children" during the four months prior to the filing of the petition. Petitioners also sought to terminate the parental rights of Haskel C. and Donald W. to their respective children based on the same grounds.

Petitioners amended their petition on August 11, 2022. In addition to the termination grounds listed in the original petition, the amended petition alleged that Mother had exhibited a wanton disregard for the welfare of the Children prior to her incarceration pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv)(c) by, inter alia, engaging in criminal activity including, but not limited to, illegal drug use. The amended petition alleged, in pertinent part:

> [Mother] was incarcerated again on April 22, 2019, while awaiting trial for actions occurring between November 2018 and January 28, 2019, for Conspiracy to Commit Wire Fraud, Interstate Transport of Stolen Property. [Mother] received a sentence of thirty-six (36) months to be served concurrently with pending charges in Bedford County General Sessions Court, Warren County Circuit Court, Coffee County Circuit Court, Wythe County, Virginia, and Livingston County, Louisiana.

In September 2022, Mother filed her answer. Neither father responded to either the original or amended petition. Then, on April 6, 2023, the trial court granted Petitioners' motion for default judgment and entered a default judgment against both fathers, terminating their parental rights to their respective children, leaving Mother as the only defendant.

The trial court held a final hearing in this cause on May 22, 2023. Pursuant to an order entered June 5, 2023, the trial court terminated Mother's parental rights to the Children. The court found that Petitioners had proven by clear and convincing evidence that a ground for termination existed based on Mother's wanton disregard for the welfare of the Children prior to her incarceration pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv).[2] The court also determined that termination of Mother's parental rights was in the Children's best interests.

This appeal by Mother followed.

## ISSUES

Mother presents two issues for our review,[3] which we have restated as follows:

1. Whether the trial court erred in concluding that Mother had exhibited a wanton disregard for the welfare of her children prior to her incarceration pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv)(c).

2. Whether the trial court erred in its findings and conclusions regarding the best interest factors enumerated in Tennessee Code Annotated § 36-1-113(i)(1).

## STANDARD OF REVIEW

Under both the United States and Tennessee constitutions, parents have a fundamental constitutional interest in the care and custody of their children. *In re Connor B.*, 603 S.W.3d 773, 778 (Tenn. Ct. App. 2020) (citing *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002)). However, parental rights are not absolute and may be terminated

---

[2] The court found that Petitioners had failed to prove by clear and convincing evidence that "grounds for termination of the Mother's parental rights exist based on the Mother['s] fail[ure] to visit the minor children for a period of four (4) consecutive months immediately preceding her incarceration pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(iv)" because neither the petition nor the amended petition "reference a four-month specific period as required by statute when the Parent has been incarcerated."

[3] Petitioners present no additional issues.

- 3 -

if there is clear and convincing evidence to justify such termination under the applicable statute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007) (citations omitted).

"To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Makendra E.*, No. W2015-01374-COA-R3-PT, 2016 WL 325481, at *2 (Tenn. Ct. App. Jan. 27, 2016) (citing *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004)).

In light of this heightened standard of proof, we must "review thoroughly the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests[,]" *In re Connor B.*, 603 S.W.3d at 779 (quoting *In re Carrington H.*, 483 S.W.3d 507, 525 (Tenn. 2016)), and make our "own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *In re Carrington H.*, 483 S.W.3d at 524 (citing *In re Bernard T.*, 319 S.W.3d 586, 596–97 (Tenn. 2010)).

The trial court's findings of fact are reviewed de novo upon the record with a presumption of correctness unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). Questions of law, however, are reviewed de novo with no presumption of correctness. *In re Carrington H.*, 483 S.W.3d at 524 (citation omitted).

**ANALYSIS**

I.     GROUNDS

In order to terminate parental rights, a court must find that at least one statutory ground for termination has been proven by clear and convincing evidence. *In re Carrington H.*, 483 S.W.3d at 535 (citing Tenn. Code Ann. § 36-1-113(c)).

Although Petitioners' amended petition presented several grounds for termination, the trial court found that the evidence clearly and convincingly supported a finding of one ground for termination of Mother's parental rights—abandonment by wanton disregard pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv)(c).

Under Tennessee Code Annotated § 36-1-113(g), "Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection," including "[a]bandonment by the parent or guardian, as defined in § 36-1-102[.]" Tennessee Code Annotated § 36-1-102 includes five alternative definitions for

abandonment. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i)–(v). In August 2022, when the amended petition was filed in this case, the applicable definition of abandonment under Tennessee Code Annotated § 36-1-102(1)(A) read as follows:

> (iv) **A parent** or guardian **is incarcerated at the time of the filing of a proceeding**, pleading, petition, or amended petition to terminate the parental rights of the parent or guardian of the child who is the subject of the petition for termination of parental rights or adoption, or a parent or guardian has been incarcerated during all or part of the four (4) consecutive months immediately preceding the filing of the action **and has**:
>
> .　　.　　.　　.
>
> (c) **[E]ngaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child**[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv)(c) (emphasis added).

Accordingly, a court may deem a parent to have abandoned his or her child if they "engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child." *Id.* This definition of abandonment requires courts "to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Johnathan M.*, 591 S.W.3d 546, 555 (Tenn. Ct. App. 2019) (quoting *In re Audrey S.*, 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005)).

We have previously held that a parent's poor judgment and bad acts that affect the children constitute a wanton disregard for the welfare of the children. *State, Dep't of Child.'s Servs. v. Hood*, 338 S.W.3d 917, 926 (Tenn. Ct. App. 2009) (citation omitted); *see also In re Audrey S.*, 182 S.W.3d at 867–68 ("[P]robation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child."). In determining whether a parent's criminal conduct constitutes wanton disregard, we consider "the severity and frequency of the criminal acts." *In re Johnathan M.*, 591 S.W.3d at 555 (quoting *In re Kierra B.*, No. E2012-02539-COA-R3-PT, 2014 WL 118504, at *8 (Tenn. Ct. App. Jan. 14, 2014)).

Here, the trial court made the following findings of fact with regard to this ground:

> The Mother continued to engage in criminal activity and illegal drug use while the children were in the Mother's care. All four of the children were subject to extreme drug exposure prior to their birth. All four of the minor children tested positive for drugs in their system at the time of their birth.

Remington [C.] witnessed a man shot during a drug deal and was also present during a drug raid at the Mother's home. Remington [C.], Colton [C.] and Caspain [W.] have all been diagnosed with Post-Traumatic Stress Disorder due to events which happened while they were in the custody of their Mother. Remington [C.] and Colton [C.] suffer from Attention Deficit Disorder, Oppositional Defiant Disorder and anger issues. Remington [C.] also has night terrors and depression. During treatment of the children, their counselors recommended to not even have phone calls from the Mother because this seems to trigger the children's issues.

The court also specifically found that Remington C. tested positive for methamphetamine at the time of his birth, that Colton C. tested positive for illegal drugs at the time of his birth, that Caspain W. tested positive for illegal drugs at the time of his birth, and that Lazarus W. tested positive for suboxone at the time of his birth.

Based upon these and other findings, the trial court held that "Petitioners have proven by clear and convincing evidence that grounds for termination of the Mother's parental rights exist based on the Mother's wanton disregard for the welfare of the minor children prior to her incarceration" pursuant to Tennessee Code Annotated § 36-1-102(1)(A)(iv)(c). Having considered the record, we find that it supports the trial court's ruling that Petitioners have proven the ground of wanton disregard by clear and convincing evidence because it clearly shows that Mother has a long record of criminal activity, that she used illegal drugs while pregnant with not one but all four of her children, and that she exposed the Children to criminal activity, including witnessing a man being shot during a drug deal. Thus, we affirm the trial court's ruling regarding this ground.

II.    BEST INTEREST FACTORS

Once a court has found a parent to be unfit based on clear and convincing evidence of one or more grounds for termination, the interests of parent and child diverge. *In re Jude M.*, 619 S.W.3d 224, 244 (Tenn. Ct. App. 2020) (citations omitted). "While the parent's interests do not evaporate upon a finding of unfitness, the focus of the proceedings shifts to the best interests of the child." *In re Audrey S.*, 182 S.W.3d at 877 (citations omitted).

"Facts considered in the best interest analysis must be proven by 'a preponderance of the evidence, not by clear and convincing evidence.'" *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citations omitted). After a court makes its factual findings regarding the relevant best interest factors, it must consider the combined weight of the best interest factors to determine whether they amount to clear and convincing evidence that termination is in the Children's best interests. *See id.*; *see also In re Kaliyah S.*, 455 S.W.3d 533, 555–56 (Tenn. 2015).

In determining whether termination of parental rights is in a child's best interest, courts must consider the non-exhaustive list of statutory factors in Tennessee Code Annotated § 36-1-113(i)(1). *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). These statutory factors are not exclusive, and courts are free to consider any other proof offered at a termination proceeding that is relevant to the best interest analysis. *In re Neveah M.*, 614 S.W.3d 659, 679 (Tenn. 2020) (citations omitted).

Here, the trial court analyzed fifteen of the statutory best interest factors. While the final order in this case does not explicitly identify the statutory best interest factor that corresponds to each of the trial court's findings, it provides sufficient explanation with regard to how the trial court reached its decision in the best interest analysis to allow us to conduct "meaningful appellate review." *See Bell v. Bell*, No. E2016-01180-COA-R3-CV, 2017 WL 2199164, at *9 (Tenn. Ct. App. May 18, 2017); *see also Grissom v. Grissom*, 586 S.W.3d 387, 395 (Tenn. Ct. App. 2019) ("'Meaningful appellate review' is only obtainable when the trial court puts forth some explanation as to how it reaches its decision in a best interest analysis.").

The trial court made the following findings and conclusions regarding the best interest factors set forth in Tennessee Code Annotated § 36-1-113(i)(1):[4]

---

[4] Tennessee Code Annotated § 36-1-113(i)(1)(A)–(T) includes the following nonexhaustive list of factors for consideration in determining whether termination of parental rights is in the best interest of the child:

(A) The effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority;

(B) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition;

(C) Whether the parent has demonstrated continuity and stability in meeting the child's basic material, educational, housing, and safety needs;

(D) Whether the parent and child have a secure and healthy parental attachment, and if not, whether there is a reasonable expectation that the parent can create such attachment;

(E) Whether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child;

(F) Whether the child is fearful of living in the parent's home;

(G) Whether the parent, parent's home, or others in the parent's household trigger or exacerbate the child's experience of trauma or post-traumatic symptoms;

(H) Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent;

(I) Whether the child has emotionally significant relationships with persons other than parents and caregivers, including biological or foster siblings, and the likely impact of various available outcomes on these relationships and the child's access to information about the child's heritage;

(J) Whether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner;

(K) Whether the parent has taken advantage of available programs, services, or community resources to assist in making a lasting adjustment of circumstances, conduct, or conditions;

(L) Whether the department has made reasonable efforts to assist the parent in making a lasting adjustment in cases where the child is in the custody of the department;

(M) Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest;

(N) Whether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult;

(O) Whether the parent has ever provided safe and stable care for the child or any other child;

(P) Whether the parent has demonstrated an understanding of the basic and specific needs required for the child to thrive;

(Q) Whether the parent has demonstrated the ability and commitment to creating and maintaining a home that meets the child's basic and specific needs and in which the child can thrive;

(R) Whether the physical environment of the parent's home is healthy and safe for the child;

(S) Whether the parent has consistently provided more than token financial support for the child; and

1. The children have been in the full care and custody of the Petitioners since March of 2019. Lazarus [W.], the youngest child, does not know who the Mother is. The children have developed a close bond with the Petitioners. Termination would allow the children to remain in this stable and loving home.

2. The caretakers of the children will not change if the Mother's rights are terminated. If the caretakers were changed it would have a severely [detrimental] effect on the children. The caretakers have had custody of the children for four years at this time.

3. Mother has had nothing to do with the children's stability, education, housing and safety needs over the last four years.

4. The children have no personal attachment with the Mother and there is no reasonable belief that such attachment could occur in the near future.

5. Mother has been unable to have regular contact with the children so as to cultivate a positive relationship with the children. Counselors had even recommended no phone calls from the Mother due to it triggering the children.

6. Being with Mother in her home would exacerbate the children's trauma.

7. The children have created a healthy and loving attachment to the Petitioners.

8. Mother has been unable to adjust her conduct and living [arrangements] to make it emotionally safe for the children. Specifically, the Mother is unemployed, has no health insurance and lives with a boyfriend in Louisiana.

9. Mother has been unable or unwilling to take advantage of all programs and services to adjust to her long-term circumstances and conduct.

10. Mother has not demonstrated any urgency in addressing the conduct and conditions that led to her separation from the children.

---

(T) Whether the mental or emotional fitness of the parent would be detrimental to the child or prevent the parent from consistently and effectively providing safe and stable care and supervision of the child.

11. Mother has not shown that she can provide safe and stable care on her own for the children.

12. Mother has not demonstrated an understanding of the basic and specific needs required for the children to thrive.

13. Mother has not demonstrated the ability and commitment to creating and maintaining a home that meets the children's basic and specific needs [in] which the children could thrive.

14. Mother has provided basically no financial support for the children prior to the Petition for Termination being filed and since the Petition was filed or since her release from Federal Prison.

15. Mother suffers from Post-Traumatic Stress disorder and goes to counseling for this once a week. It is highly unlikely she would be able to effectively provide a safe and stable care and supervision of the children. This would be detrimental to the children. She is unemployed with no health insurance. The continued treatment for the children and their issues is extremely important to the stability of the children.

Based upon our review of the record, we find that the evidence preponderates in favor of each of the trial court's best interest findings.

As stated above, after a court makes its factual findings regarding the relevant best interest factors, it must then determine whether the combined weight of the best interest factors amount to clear and convincing evidence that termination is in the child's best interests. *In re Carrington H.*, 483 S.W.3d at 535; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56.

> Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis."

*In re Gabriella D.*, 531 S.W.3d at 682 (quoting *In re Audrey S.*, 182 S.W.3d at 878) (citations omitted).

Here, the trial court found that Petitioners had proven by clear and convincing evidence that termination of Mother's parental rights was in the Children's best interests. Based upon our review of the record and our consideration of the relevant best interest factors as found by the trial court, we agree that the combined weight of the relevant factors amount to clear and convincing evidence that termination of Mother's parental rights is in best interests of the Children. *In re Carrington H.*, 483 S.W.3d at 535; *see also In re Kaliyah S.*, 455 S.W.3d at 555–56.

Accordingly, we affirm the trial court's determination that termination of Mother's parental rights is in the Children's best interests.

Because we have affirmed the trial court's determination that a ground for termination of Mother's parental rights has been proven and that termination of Mother's parental rights is in the Children's best interests, we affirm the termination of Mother's parental rights to the Children.

## CONCLUSION

For the reasons stated above, we affirm the termination of Mother's parental rights to Remington C., Colton C., Caspain W., and Lazarus W. Costs of appeal are assessed against the appellant, Miranda C.

_____
FRANK G. CLEMENT JR., P.J., M.S.